**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**LUBBOCK DIVISION**

| | | |
|---|---|---|
| **N.G, B/N/F BRITTNI RIVERS** | § | |
| **PLAINTIFFS,** | § | **C.A. NO. 5:24-cv-00039** |
| | § | |
| **v.** | § | |
| | § | |
| **FRENSHIP INDEPENDENT SCHOOL** | § | |
| **DISTRICT, and DURHAM SCHOOL** | § | |
| **SERVICES, L.P.** | § | |
| **DEFENDANTS.** | § | **JURY DEMAND** |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW BRITTNI RIVERS as next friend on behalf of her son, N.G. a minor, ("Plaintiffs" herein) and files their *Original Complaint* alleging that the FRENSHIP INDEPENDENT SCHOOL DISTRICT (hereinafter referred to as "The District") based in Wolfforth, Texas, and DURHAM SCHOOL SERVICES ("hereinafter referred to as "Durham School Services"), collectively, "the Defendants", violated the rights of N.G. in the manners and particulars more specifically addressed below. Plaintiffs reserve the right to replead if new claims and issues arise upon further development of the facts, as permitted by law. In support thereof Plaintiffs would respectfully show this tribunal the following:

## I. INTRODUCTION

1.   For all times relevant to this Complaint, N.G. was a student in the Frenship ISD.  He is cognitively impaired and has a number of observable disabilities including a very noticeable speech impediment that make him an easy object of derision by his peers.  On almost a daily basis for almost two years he was called stupid, spaz, space case, SPECED and retard and was mocked for that speech impediment.  He is also of mixed race, Caucasian, Hispanic and

African-American and was called 'nigger' or 'mutt' all the time because of his ethnicity. Sprinkled throughout the timeline are a number of incidents where he was physically assaulted as well. His mother continuously complained to School District Officials about the bullying her son experienced, all who had the ability to address her concerns, but each failed to do so.  Accordingly, N.G. has plausible claims against the School District pursuant to Section 504 of the Rehabilitation Act of 1973 ("Rehab Act"), 29 U.S.C. §794 for the failure to provide him a safe and non-hostile educational environment, He also has another discrimination based upon disability entitled a 'failure to accommodate claim' pursuant to both the Rehab Act and the Americans With Disabilities Act, 42 U.S.C. 12131 et seq., ("ADA").  Moreover, he as a claim of discrimination based upon race, as contemplated by 42 U.S.C. §2000d, Title VI of the Civil Rights Acts of 1964. Further, that the acts and omissions of School District Board and Staff violated N.G.'s civil rights pursuant to the United States Constitution, and may be remedied by 42 U.S.C. 1983.  Separately, while N.G. was on a bus driven by Durham School Services employee, he was injured by the acts, omissions and negligence of the bus driver.  He thus has various federal, state and common law claims against the Durham School Services Defendant as well.

## II. JURISDICTION

2.    Jurisdiction is conferred upon this Court pursuant to 28 U.S.C.A. §1331 and §1343 because the matters in controversy arise under the Constitution and laws of the United States.

3.    Additionally, this Court has jurisdiction over her state and common law claims pursuant to 28 U.S.C.A. §1367.

## III. VENUE

4.    Pursuant to 28 U.S.C. §1391 this Court is the proper Venue over this cause, as all events and

omissions giving rise to Plaintiffs claim occurred in the Northern District of Texas, Lubbock Division.

## IV. PARTIES

5.    As noted above, N.G. is a minor and lives with his mother in Lubbock, Texas.  During all times relevant to this cause he was a student in the Frenship Independent School District.

6.    The Defendant Frenship Independent School District, is a school district organized under the laws of the State of Texas. This Defendant may served with process by and through their counsel of record, Mr. Slater C. Elza and Ms. Janet Sobey Bubert, of the Underwood Law Firm, P.C., P.O. Box 9158, Amarillo, Texas 79105; (806) 376-5613 [Telephone]; (806) 379-0316 [Facsimile]; slater.elza@uwlaw.com [Email]; and 600 Bailey Avenue, Suite 200, Fort Worth, Texas 76107; (817) 885-7529; (817) 439-9922 [Facsimile]; janet.bubert@uwlaw.com [Email].

7.    The Defendant Durham School Services L.P., may be served with process by and through their Registered Agent, C.T. Corporation System whose address is 1999 Bryan St., Suite 900, Dallas TX 75201.

## V. FACTS

A.    ABOUT N.G.

8.    N.G. was born on May 7, 2010. He is currently thirteen (13) years old.  N.G. transferred to the FISD in or around April 2022.  His  intellectual ability standard score has been tested at "73" which the School District has recognized his overall intellectual ability to be limited.  He also has been diagnosed with Autism, Attention Deficit Hyperactivity Disorder and Post-Traumatic Stress Disorder.  He has significant problems in both  understanding others and communicating with others and is simply put, not as smart as his peers.  In fact he just above

borderline for what now called an Intellectual Disability (formerly called mental retardation). He also has a significant speech impediment and an overt problem in learning, as well as his peers. Based upon all the above he was constantly called stupid, spaz, space case, SPECED and Retard. The children would make fun of his speech impediment. He is also of mixed race, Caucasian, Hispanic and African-American. He was also called 'nigger' or 'mutt' all the time. As further discussed below, mother complained to a number of School District personnel about the bullying but they did nothing about it. Not surprisingly, and given license to do so, some of the harassment became physical and assaultive.

B.    N.G. ALSO EXPERIENCED PHYSICAL ASSAULTS .

9.    On or about the afternoon of September 2, 2022, N.G. was exiting his school bus when he was assaulted by another student, "Adam" who punched him in the stomach His mother, called Cale Bridges, Principal, and reported the assault. She was told that because the "fight" happened off of school property, that nothing could be done. Mr. Bridges promised N.G.'s mother, however, that he would bring both students into his office and tell him that fighting was unacceptable but mother does not know if that meeting ever occurred. If it did, it had no effect because Adam continued to verbally harass N.G. throughout the school year and attacked again. Importantly, mother continued to complain to Bridges about Adam and others, but to no avail. During the Fall Semester, N.G. experienced a concussion while paying football.

10.    On or about the afternoon of December 14, 2022, Adam again assaulted N.G. on the bus ride home. Adam hit N.G. in the face with his hand. N.G. texted his mother to tell her what happened. He called a few moments later. Ms. Rivers could hear Adam in the background saying that "N.G. is snitching and telling on us and trying to get us in trouble." The bus

driver, Sherri Adams, instead of helping N.G., did nothing.  N.G. did not feel safe and asked his mother to pick him up from the bus stop, which she did.  When N.G. was exiting the bus, Ms. Rivers heard the Bus Driver Adams berate her son.

11.    Ms. Rivers then attempted to call Mr. Bridges, the School Principal, but no one answered the phone and the voice mail was full.  Ms. Rivers then sent a message via Skyward, the District's virtual communication system, to inform him of what had happened. Ms. Rivers took a photo of N.G.'s face, which had a slap mark on it.  On the following day, Ms. Rivers went to the Durham School Services to report the incident that had occurred and complain about the driver.  Mother also requested the bus camera footage of the incident.

12.    Ms. Rivers did meet with Julia Berry, Operations Supervisor. She explained the incident and shared the photo of her son's bruised face.  Ms. Berry, said she would prepare an incident report, speak with her supervisor and call the school to report the incident, but she did not. That afternoon, Ms. Rivers picked up N.G. from the school and spoke with Scott Swindoll, Assistant Principal. Ms. Rivers told Swindoll that she wanted to discuss what had happened the day prior. Mr. Swindoll stated that he had no knowledge of the incident, but would help Ms. Rivers launch an investigation into the incident.  Likely not, because the bullying did not stop.

13.    On or about December 16th N.G. was standing in line for breakfast. . Adam approached N.G. and began cursing at him, including using the "N" word.  Adam then pushed N.G. multiple times and continued verbally harassing him for the rest of the day. N.G. felt so unsafe returning at school that he did not until January, following Christmas Break.

C.    THE BULLYING CONTINUES

14.    After the New Year, on or about January 7, 2023, Ms. Rivers emailed Michelle McCord, the

Original Complaint                                                                                                                5

Superintendent, to make her aware of the bullying her son was experiencing on as daily basis. Ms. McCord emailed Ms. Rivers back on or about the 10th promising that either Mr. Dean or Mr. Books, Administrators address her concerns. Later that same say mother returned to Durham School Services to speak with Ms. Julia Berry, Supervisor. Ms. Rivers wanted to make several complaints regarding N.G.'s bus driver, Ms. Sherri. For instance that when Adam hit N.G. in the face, and he looked to her for assistance, she not only refused but told N.G. she saw him ram his face into Adam's hand. Further, that Ms. Sherri constantly yelled at N.G. and made negative comments to him. Mother complained that on one occasion the driver even permitted Adam to exit the same bus at N.G.'s bus stop, knowing this was not his own stop, and knowing that Adam would attack N.G., which he did.

15. At this time, Ms. Berry told Ms. Rivers that she forgot to submit the first incident report. Ms. Rivers again sent the photo of N.G.'s face to Ms. Berry so that an investigation could begin. On or about January 11th Ms. Rivers reportedly spoke with Michael Brooks, Director of Student Services. She reported all of the above-referenced incidents of bullying and harassment. Mr. Brooks told Ms. Rivers that he would conduct an investigation and would speak to Cale Bridges, Principal, to learn more about what had happened. Brooks also said he would look into concerns about the bus driver. N.G. told his mother that Ms. Sherri continued to yell at N.G.

16. That afternoon, Ms. Rivers again returned to Durham School Services to lodge additional complaints against Ms. Sherri, the Bus Driver. In addition to the ongoing problems N.G. told his mother that Ms. Sherri told other students that she knew his mother was complaining about her, that Ms. Rivers was being difficult, and that N.G. needed to "get a hold" of his mother, and that N.G. was a "wuss."

D.    N.G EXPERIENCES A CONCUSSION ON THE BUS DUE

17.    Beginning on or around January 17th N.G. called his mother every day for at least a week as he was boarding the bus and would remain on the phone with her until he exited the bus. On the 20th N.G. called his mother at 3:46 P.M. in the afternoon as he had done for several days prior. N.G. put his phone down but did not hang up on the call. Ms. Rivers could hear Ms. Sherri admonishing her son.  Ms. Sherri was scolding N.G. for taking too long to get off at his bus stop, and that he would have to get off at the next stop. N.G. protested, saying, "This is my bus stop. This is where I will get off. This is where I am safe. You cannot keep me on the bus." N.G. stood up to exit the bus at his designated bus stop, where the bus was currently stopped.  Instead of keeping the bus stopped, and letting N.G. off the bus at his designated stop, Ms. Sherri briskly started the bus and begins to drive away while N.G. was still standing.  N.G. fell and hit his head on a metal bar and landed on the bus floor. Horrified, Ms. Rivers can hear this entire incident on N.G.'s phone.

18.    N.G. called his mother when he was able and was forced to exit the bus at an unfamiliar stop.  He is on the phone sobbing and can hear him tell Ms. Sherri that she needs to speak with his mom.  Instead, Ms. Sherri forces him off the bus, quickly shuts the bus doors and quickly drives away.  Ms. Rivers immediately drove to her son's  location and observes that there is a large bump developing on N.G.'s head.  Ms. Rivers took her son to the UMC Urgent Care Center. There he was diagnosed with a concussion and put on a concussion protocol plan.  This was N.G.'s second concussion during that academic year. The School District knew of the incident and the follow up treatment plan but did nothing to protect him from further harassment.

E.    THE BULLYING AND HARASSMENT CONTINUES

19.    On or about February 6, 2023, Ms. Rivers was running late to pick her son up from school. While waiting N.G. went to the band hall to practice his music. Adam and two of his friends cornered N.G. outside of the band hall and began shoving him around.  Adam and friends hit N.G. in the head, which in Adam's words made N.G.'s "ears ring." The three perpetrators then ran away.  He had bruises to his right arm. inside bottom lip, jaw and neck pain and swelling of the left side of his head. Ms. Rivers soon  made it to the school to pick up her son. Ms. Rivers took a photo of N.G.'s head and took him to his primary care physician. The physician confirmed that the 'beat-down' N.G.'s experienced reaggravated the concussion symptoms.   In May of that year N.G. is attached by another student and has another concussion.

20.    The various and ongoing failures of the School District to keep N.G. free from the bullying, harassment and assaults he experienced at school, including hat of the Bus Driver, caused N.G. to experience two concussive episodes.   He continues to experience migraine headaches which cause him not to see, light sensitivity, flashing lights, the need to seek solace in the dark and chronic fatigue.  He also continues to experience anxiety, depression, nervousness and suicidal thoughts.

## VI. STATE ACTION

21.    Plaintiff incorporates by reference all the above-related paragraphs with the same force and effect as if herein set forth. In addition, each sentence and paragraph below, likewise incorporates by reference as if fully set forth herein, the ones above it.

22.    At all relevant and material times the Defendant District was a recipient of federal funds, and was a public facility as contemplated federal and state law.

## VII. VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT OF 1973

23.    The implementing regulations of Section 504 require that each state that receives disbursements, including the state's political subdivisions such as local school districts, must ensure all students with disabilities are given appropriate and necessary accommodations, pursuant to federal law and rules. To the degree that a policy or practice hinders honest consideration of a disabled student's unique and individualized needs, and fails to accommodate that child's disability and keep the student safe, it violates Section 504 of the Rehabilitation Act of 1973.

24.    Both the School District and the Durham Bus Company Defendant received federal funds and thus must follow the requisites of the Rehab Act.

A.    PROFESSIONAL BAD FAITH OR GROSS MISJUDGMENT CLAIM

25.    Also, in addition to and in the alternative to the above, Petitioner asserts that the School District demonstrated professional bad faith or gross misjudgment and/or mismanagement of the Student's educational plan, also violating Section 504 of the Rehabilitation Act thereby.

B.    FAILURE TO KEEP SAFE CLAIM

26.    In addition and in alternative to the above, the Student asserts that the School District failed to provide him a safe and non-hostile educational environment, and as such she is a victim of discrimination based upon disability pursuant to Section 504.

C.    FAILURE TO ACCOMMODATE CLAIM

27.    The above noted facts also support a plausible "failure to accommodate" claim.

### VIII. VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

28.    The Americans with Disabilities Act ("ADA"), provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied

the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." The regulations implementing the Americans with Disabilities Act provide that it is discriminatory to deny a person with a disability the right to participate in or benefit from the aid, benefit, or service provided by a public entity.

29. N.G. is a qualified person with a disability as defined in 42 U.S.C. 12131(2). The District is a public entity as defined in 42 U.S.C. 12131(1), and receives federal financial assistance rendering it subject to the mandates of the ADA. The School District and its schools are facilities and their operation constitutes a program and services for the purposes of the ADA.

30. Specifically and separate and apart from her Section 504 cause(s) of action, N.G. alleges that the School District failed to and refused to reasonably accommodate and modify services needed by her based upon her disability, in violation of Title II of the ADA.

**IX.  CLAIMS PURSUANT TO TITLE VI OF THE CIVIL RIGHTS ACTS OF 1964**

31. .Title VI of the Civil Rights Act of 1964 and its implementing regulations require that each state that receives disbursements, including the state's political subdivisions, not permit the student to be a victim of discrimination based upon race, nationality or related stereotypes.

32. Plaintiffs assert that because the Frenship ISD knew that N.G. was being bullied, harassed and physically assaulted based upon his race and race-based stereotypes and failed to keep him safe from harm, and failed to provide him an environment that was not hostile, such failures as noted above, have together and separately, contributed to violating his civil rights pursuant to Title VI.

33. Pursuant to relevant jurisprudence on the topic, including School Board Policies and Procedures, School District personnel had a duty to investigate such concerns and refused to do so, violating his civil rights pursuant to Title VI thereby. In addition, because the

School District Defendant refused to remedy the effects of the bullying and harassment directed at N.G. whatever the cause, Defendant's caused additional and ongoing injuries to him, violating his civil rights pursuant to Title VI thereby.

## X.  CLAIMS PURSUANT TO THE U.S. CONSTITUTION

34.   42 U.S.C. §1983 protects a student at a public school from violations of their federally protected rights. In the instant case Doe I had her constitutional rights in the following manner and particulars.

A.    RIGHT TO PRIVACY, BODILY INTEGRITY AND LIBERTY INTEREST

35.   Plaintiff contends that the acts and omissions of the School District Defendant violated his right to physical privacy and life, liberty and the pursuit of happiness, pursuant to the Fourteenth Amendment of the Constitution of the United States for which he seeks recovery against the School District pursuant to 42 U.S.C. §1983.

B.    PROPERTY INTEREST

36.   Plaintiff has a cognizable property right in her education pursuant to the Constitution of the United States and Texas, pursuant to Texas Constitution, art. 7.  The School District failed to assure N.G. was able to enjoy such rights, and as such, he seeks recovery for damages pursuant to 42 U.S.C. §1983.

C.    EQUAL PROTECTION CLAIM

37.   Such acts, omissions and failures by the School District were a moving force in violating the rights of N.G. as a class of one, as contemplated by the Equal Protection of the Fourteenth Amendment of the Constitution of the United States for which he also seeks recovery pursuant to 42 U.S.C. §1983.

D.    FAILURE TO SUPERVISE AND TRAIN

38.     Such deliberate indifference manifested itself in te School Board's failure to supervise staff as to their duties and responsibilities under the operative, regulations related thereto and professional standards of care for providing services to special education students   Such failures, rise to the level of a violation of the Due Process Clause of the Fourteenth

39.     Such deliberate indifference manifested itself in te School Board's failure to train staff as to  their duties and responsibilities under the operative, regulations related thereto and professional standards of care for providing services to special education students   Such failures, rise to the level of a violation of the Due Process Clause of the Fourteenth Amendment.

## XI.   CLAIMS PURSUANT TO THE COMMON LAW

40.     Plaintiff alleges that the Durham School Services had a duty to provide N.G. a safe and non-hostile transportation experience, did not and were negligent thereby.

41.     The Durham School Services Defendant failed to correctly supervise staff.

42.     Further,  the Durham School Services Defendant failed to correctly train staff.

43.     The Durham School Services Defendant was grossly negligent.

44.     N.G. suffered damages because of such negligence and gross negligence.

## XII. RATIFICATION AND RESPONDEAT SUPERIOR

45.     The District ratified the acts, omissions and customs of School personnel and staff.

46.     Additionally, the District is responsible for the acts and omissions of staff persons who were otherwise responsible for N.G.'s care and safety, including those of Durham School Services, as contemplated by the theory of *Respondeat Superior.*

47.     Further, the Durham School Services Defendant is responsible for the acts and omissions of staff persons who were otherwise responsible for N.G.'s care and safety, as contemplated

by the theory of *Respondeat Superior*

.

## XIII. DAMAGES

54.     As a direct and proximate result of the acts and omissions of the School District Defendant and Durham School Services Defendant, N.G. is entitled to recover the following damages, all within the jurisdictional limits of this court:

a.      Normal, incidental and nominal damages;

b.      Restitution including costs of cure;

c.      Loss of consortium;

d.      Loss of enjoyment;

e.      Loss of opportunity;

f.      Past pain and discomfort;

g.      Reimbursement for past medical expenses;

h.      Reimbursement for future medical expenses;

i.      Reimbursement for past mental health expenses;

j.      Reimbursement for future mental health expenses;

k.      Reimbursement for past mental anguish;

l.      Reimbursement for future mental anguish;

m.      Various out-of-pocket expenses incurred by the family but for the acts and omissions of the District;

n.      Punitive damages against the Durham School Services Defendant; and

o.      Any such other relief that a Jury can give in law or in equity or both.

## XIV. <u>DEMAND FOR A JURY TRIAL</u>

55.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demand a jury trial for all issues in this matter.

**PRAYER**

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays in the manner and particulars noted above, for the Court to enter a judgment in an amount sufficient to fully compensate N.G. for the elements of damages enumerated above, that said judgment be the responsibility of Defendants, jointly and severally, for  recovery of attorney's fees and costs for the preparation and trial of this cause of action, and for its appeal if required, pursuant to the United States Constitution, federal  civil rights statutes, and the common law, and for other such relief that this Court may deem just and proper in law, equity, or both.

Respectfully submitted,

/s/ Martin J. Cirkiel
Mr. Martin J. Cirkiel, Esq
SBN: 00783829
marty@cirkielaw.com [Email].
Federal ID 21488
Cirkiel Law Group, P.C.
1901 E. Palm Valley Boulevard
Round Rock, Texas 78664
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]; and

Mr. Anthony O'Hanlon, Esq.
SBN 15235520
anthony.ohanlon@somlaw.net [Email]
Anthony O'Hanlon, P.C.
111 South Travis Street
Sherman, Texas 75090
(903) 892-9133 [Telephone]
(903) 957-4302 [Facsimile]

**ATTORNEYS FOR PLAINTIFFS**